UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES BAKER,

                Plaintiff,                Case No. 14-cv-14035

v.                                           Honorable Thomas L. Ludington

DEBBIE ROYCE,

                Defendant.
_____/

**OPINION AND ORDER DENYING MOTION TO REMAND**

Plaintiff James Baker initiated this case against Defendant Debbie Royce on September 18, 2014 in Roscommon County Circuit Court. ECF No. 1, Ex. 1. On October 20, 2014, Royce removed the case to this Court. ECF No. 1 & 2. In the notice of removal, Royce claimed that this Court has federal subject matter jurisdiction under 28 U.S.C. § 1331. *Id*. Baker, contesting that assertion, filed a motion to remand the case to state court on October 29, 2014. ECF No. 3. Because this Court does have federal subject matter jurisdiction over Baker's claims, his motion will be denied.

**I.**

Plaintiff Baker is a 61 year-old former employee of Lear Corporation. ECF No. 3 at ¶ 2. He began working at Lear in 2008 after he lost his job in education. *Id*. Baker was "a member of the bargaining unit represented by UAW Local 1819." ECF No. 7 at 1; *see also* ECF No. 3 at 2.

**A.**

On March 1, 2014, Baker got into an argument with Defendant Royce. *Id*. Royce "was [Baker's] union steward during his employment at Lear." *Id*. According to Royce, during the argument Baker "expressed anger over complaints that had been made by employees about

[Baker's] sister[.] Plaintiff became increasingly agitated and eventually told Royce that he would kill Lear supervisor Bob Reycraft if anything happened to this sister." *Id*. Baker denies making this threat.

**B.**

On March 5, 2014, Royce reported the alleged threat to Lear management. ECF No. 7 at 1; see also ECF No. 3 at 2. On that same day, "Lear suspended [Baker] with pay, pending investigation. *Id*. During the investigation, Baker accused Royce of fabricating the argument and the threat, a position he still maintains. *Id*. "Lear concluded that [Baker] had, in fact, made the threat and that the threat violated [the collective bargaining agreement]." *Id*. Baker's employment was terminated on May 6, 2014. *Id*. at 2.

**II.**

**A.**

Federal question jurisdiction gives federal courts authority to hear cases "arising under [the] Constitution, the Laws of the United States, and Treaties made[.]" US Const Art III. Thus, where a federal law creates or governs the right at issue in a dispute, the case presents a federal question. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012) (holding that a case arises under the laws of the United States where "federal law creates the right of action and provides the rules of decision"). State courts, however, are equally competent as federal courts to adjudicate federal issues. *Haywood v. Drown*, 556 U.S. 729, 746 (2009). Nevertheless, Defendants have the ability and right to remove a case from state to federal court where that case presents a federal question. 28 U.S.C. § 1441. Removal of a case from state to federal court is governed by the federal removal statute, 28 U.S.C. §§ 1441, 1446.

In order for a case to be removed, the federal court must have original jurisdiction to hear the controversy. *Id*. When a plaintiff's case is removed, he or she may file a motion to remand the case to state court. 28 U.S.C. § 1447. A plaintiff seeking a remand of his or her case must establish that the federal court to which the action was removed lacks jurisdiction over the case and that jurisdiction properly lies with the state court whence the action came. *See id*. at §1447(c); *see also Int'l Tin Council v. Amalgamet Inc.*, 645 F. Supp. 879 (S.D.N.Y. 1986) (noting that a case must be remanded to the state court where it originated). If the federal court has proper jurisdiction, the case will not be remanded.

**B.**

Certain areas of law are so intrinsically federal in nature that they are deemed to have completely preempted all other state laws and regulations on that subject. *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) ("Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."). Any case that calls for adjudication of a parties' rights, duties, or obligations in one of these areas always presents a federal question. *Id*. "The Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption[.]" *Id*. Section 301 of the Labor Management Relations Act has created one of these areas. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 558-563 (1968).

The Sixth Circuit has developed a two part test for determining whether § 301 preemption applies to a dispute. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). "First, the district court must examine whether proof of the state law claim requires interpretation

of collective bargaining agreement terms." *Id*. When making this determination "the court is not bound by the 'well-pleaded complaint' rule[.]" *Id*. Rather, the court must "look[] to the essence of the plaintiff's claim, . . . to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id*. If the essence of a plaintiff's claim is contractual in nature, the claim is dependent on the CBA and presents a federal question. *Id*. Relatedly, if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract" the claim is preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). In the second step of the inquiry, "the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Id*. Similarly, if the right claimed arises out of the CBA then a federal question is presented.

### III.

Plaintiff Baker brings three counts in his state court complaint against Royce. First, he claims that Royce committed, alternatively, defamation, slander, or libel when she reported on Baker's alleged threat. Second, he claims that Royce committed the tort of intentional infliction of emotional distress when she reported on the alleged threat. Lastly, he claims that Royce tortuously interfered with his contractual relations when she made her report. While all of these claims are state law claims they all have some relation to the Collective Bargaining Agreement that governs Baker's former employee relationship, even if tenuous. For a court to decide the state tort law claims that Baker brings it is necessary to interpret the terms of the CBA which governed Baker's time as an employee. For that reason, Baker's case will not be remanded to state court.

**A.**

Baker's first claim is that Royce committed, in the alternative, defamation, slander, or libel when she reported on his alleged threats. Baker alleges that "Royce intentionally and maliciously published false and defamatory statements about . . . Baker[.]" ECF No. 1, Ex. 1 at ¶ 7. These statements "specifically includ[ed] false accusations that [Baker] had threatened to kill, shoot or do harm to Bob Reycraft, a neighbor of . . . Baker and also a managerial employee at Lear Corporation." *Id*.

Baker claims that his defamation count is purely one of state law for a number of reasons. First, he argues that he has followed the proper "demand for retraction" procedure under Michigan Law and so he "is entitled to recover exemplary and punitive damages, as well as compensatory damages . . . under Michigan law[.]" ECF No. 3 at ¶ 7. Because he is able to recover these damages, he claims, this count is not a disguised breach of contract claim. "Michigan law", he argues, "does not allow non-economic or punitive damages for breach of commercial contracts." *Id*. at ¶ 8.

Second, he claims that his defamation claims are not "in any way claims, procedures or remedies addressed or available under any contract or collective bargaining agreement. Rather, they are independent state law claims with procedures, rights and remedies that are separate and apart from any contract." *Id*. at ¶ 9. And lastly, Baker claims that "Royce points to no part of the collective bargaining agreement that allows . . . Baker to pursue these state law tort claims and remedies provided under independent state law, or under which he has released his rights under state law." *Id*. at ¶ 10.

Baker's primary claim for remand, however, is that "[t]here is no need to interpret the collective bargaining agreement to address [his] state law tort claims in this matter." *Id*. at ¶ 11.

While Baker's first three arguments in support of remanding his defamation claim may be accurate observations about the nature of the state law claims, his last argument is not.

To recover for defamation under Michigan law, a plaintiff must show:

> (a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod).

*New Franklin Enterprises v. Sabo*, 480 N.W.2d 326, 328 (Mich. Ct. App. 1991) (quoting *Postill v. Booth Newspapers, Inc.*, 325 N.W.2d 511, 516 (Mich. Ct. App. 1982). Important for Baker's purposes is the requirement that the published statement be unprivileged. "The initial determination whether the publication is privileged is one of law for the court." *New Franklin Enterprises*, 480 N.W.2d at 328.

> In ascertaining whether the plaintiff has satisfied the second element—that the publication was unprivileged—the court must keep in mind that '[q]ualified privilege . . . extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty.'

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 17 (6th Cir. 1994) (quoting *Merritt v. Detroit Memorial Hosp.,* 265 N.W.2d 124, 127 (Mich. Ct. App. 1978)) (emphasis and alterations in original).

Defendant Royce argues that Baker's case must remain in federal court because determining whether her communications were privileged requires an interpretation of a CBA. ECF No. 7 at 11. Royce contends that her publication of Baker's alleged threat fits within *DeCoe*'s admonition that a qualified privilege extends to individuals who have an obligation to report "to a person having . . . an interest or duty . . . in reference to" the subject-matter of the communication. *DeCoe*, 32 F.3d at 217. In short, Royce submits that a court hearing Baker's defamation claim must also address Royce's counter-assertion that she had a duty under the CBA

- 6 -

to report Baker's alleged threat to her supervisor. Thus, she argues "a court would need to interpret these provisions in order to determine whether Royce's communications were privileged." ECF No. 7 at 13.

Nothing in Baker's reply brief suggests that such a determination would not need to be made. Baker only argues that there is no need to interpret the CBA to decide the defamation claim because the defamation inquiry is a "factual determination of whether Defendant Royce lied, or alternatively, was truthful about her absurd, defamatory 'reports' that Plaintiff Baker threatened to murder Mr. Reycraft." ECF No. 8 at 2. The argument is without merit. As noted above, the court must decide, as a matter of law, whether a publication is privileged. *New Franklin Enterprises*, 480 N.W.2d at 328. The allegation by Royce that the CBA imposed a duty to report the alleged threat and the text of the CBA, attached to her response brief, suffices to satisfy the required showing that a court deciding Baker's claims must interpret the terms of a CBA.

Royce identifies three different CBA provisions supporting removal of Baker's defamation claim. The first provision is the CBA's policy prohibiting "[t]hreatening intimidating, coercing, or interfering with employees or Supervision at any time." ECF No. 7, Ex. 4 at 57. The second provision Baker identifies is Article VI of the CBA which "spells out the duties of union stewards and the manner in which they are to complete these duties." ECF No. 7 at 13. Third, Baker points to a requirement that "[e]ach condition observed by an employee that could result in an injury or property damage must be reported to his or her supervisor." ECF No. 7, Ex. 4 at 58. The first two of these provisions, however, do not have any bearing on the preemption inquiry. Nothing in the text of these provisions explicitly or implicitly require Royce to report on Baker's alleged threat. The third provision, however, does, albeit narrowly, meet this

standard. While it remains to be seen whether the provision requiring the reporting of dangerous conditions actually mandated Royce's reporting, it is sufficient to show at this stage a bona fide belief on the part of Royce that her communication was privileged.

This single provision which only questionably imposes a duty on Royce, falls short of the comprehensive sexual harassment policy at issue in *DeCoe* which led the Sixth Circuit to hold DeCoe's claims were preempted. But the provision is still substantial enough to support removal. In *Williams v. York Int'l Corp.*, 63 F. App'x 808 (6th Cir. 2003), and *Harmon v. Paintsville Hosp. Co., LLC*, No. 7:11-CV-050-KKC, 2011 WL 4900019 (E.D. Ky. Oct. 14, 2011), two cases finding no preemption, there were provisions in each defendant's CBA similar to the first two provisions in Lear's CBA. But the CBA in *Williams* and *Harmon* lacked any sort of provision that could have been construed as imposing a duty on the defendants to report on the plaintiffs in the manner they did.

For instance, the *Harmon* court held that merely asserting that the CBA "permitted [the defendant] to report nurse misconduct in order to comply with Kentucky law" was insufficient to establish preemption. *Harmon*, 2011 WL 4900019 at *8. The difference between discretionary compliance and an affirmative duty resulted in the difference between whether interpretation of the CBA was necessary to construe the plaintiff's claims or whether the CBA was merely being used as a defense to state law claims. Baker's case is inapposite because the CBA contains a provision that can reasonably, though not necessarily, be construed as imposing a reporting obligation on Royce. Thus, interpretation of the CBA will be necessary, at least in some measure, to decide Baker's claim. Baker's first claim is preempted by federal law and, as a result, poses a federal question.

**B.**

Next, in his complaint, Baker claims that Royce committed the tort of intentional infliction of emotional distress. The facts supporting the claim are identical to those supporting his defamation claim. Baker makes few arguments specifically relating to his intentional infliction of emotional distress ("IIED") claim but does cite in his reply to a Sixth Circuit case where the court stated that the "conclusion that preemption is warranted in all cases involving intentional infliction of emotional distress is too broad." *Williams v. York Int'l Corp.*, 63 F. App'x 808, 812 (6th Cir. 2003). Baker argues that that dictum should apply with full force here.

In Michigan, the claim for IIED adheres to the definition of the tort provided by the Restatement (2d) of Torts. *Id.* at 218. The Restatement defines the tort as: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195 (6th Cir. 1986) (quoting Restatement (2d) of Torts § 46 (1965)) (explaining that lower Michigan courts have uniformly adopted the Restatement standard). The requirement of outrageousness is stringent. *DeCoe*, 32 F.3d at 219. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 196 (6th Cir. 1986) (quoting Restatement (2d) of Torts § 46 (1965)).

Here, Baker does no more than conclusorily allege that Royce's conduct was outrageous. In support of his motion he asserts that there is no need to interpret the CBA to determine if Royce's conduct met the standard of outrageousness and marshals the support of *Williams*. *Williams* does indeed hold that § 301 preemption does not universally apply to IIED claims

arising in unionized workplaces. 63 F. App'x at 812. But that holding was in response to the district court decision concluding that all IIED claims were, in fact, preempted. *Id*. The *Williams* court did no more than reiterate that even IIED claims arising in unionized workplaces still follow the traditional rule for determining whether a federal question is presented. That is, in *Williams*, the Sixth Circuit held that where a court must refer to a CBA to determine if the defendant's behavior was outrageous, the claim is preempted and a federal question is presented. This is so because "where [a defendant] has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence [wa]s certain to cause emotional distress" he has not acted outrageously. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 219 (6th Cir. 1994) (quoting *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 196 (6th Cir. 1986)) (internal quotation marks omitted).

Baker's IIED claim, then, is analyzed no differently than his defamation claim. So while the *Williams* court did not apply § 301 preemption it only did so after analyzing the scope of the CBA at issue and finding its interpretation unnecessary to resolution of the claim. Because the CBA did not create rights or obligations upon which the defendant permissibly insisted when allegedly acting outrageously, there was no preemption. In reaching this conclusion the *Williams* court analyzed a prior Sixth Circuit case, already discussed herein: *DeCoe*. 32 F.3d 212. In *DeCoe*, the plaintiff pled, along with defamation, an IIED claim, and tortious interference with contractual relations claim. The plaintiff alleged that the defendants made a false accusation of sexual harassment against him. The Sixth Circuit held that plaintiff's IIED claim was preempted because the CBA contained a sexual harassment policy. This policy "imposed a duty on GM, the individual defendants, and the UAW to identify and resolve sexual harassment complaints." *Id*. at 217. Proofs by the plaintiff that the defendants acted outrageously would have to show that the

defendant was not "insist[ing] upon his legal rights in a permissible way." *Id*. at 219. This determination required interpretation of the CBA and so § 301 applied to preempt the plaintiff's state law claims.

*DeCoe* applies directly to Baker's case. Despite Baker's suggestion that *Williams*' holding governs his case, he offers no proof of why the facts of *Williams* appropriately apply to his set of facts. As discussed above, *supra* § III.A, Royce has provided the CBA that governed Baker's employment and identified three provisions which, she contends, demonstrate a duty to report threats. As with Baker's defamation claim, the first two of the provisions are unavailing. Also like Baker's defamation claim, however, the provision that "[e]ach condition observed by an employee that could result in an injury or property damage must be reported to his or her supervisor" operates to preempt Baker's IIED claim. *See* ECF No. 7, Ex. 4 at 58. Because "[w]ithout reference to the CBA, we could not possibly know whether [Royce] acted outrageously or was merely insisting on [her] legal rights as a supervisor charged with ensuring compliance with the rules of [Lear Corporation]." *Mattis v. Massman*, 355 F.3d 902, 908 (6th Cir. 2004). For that reason, Baker's IIED claim is also preempted.

## C.

Lastly, Baker claims that Royce's reporting of his alleged threat tortuously interfered with his contractual relations. According to Baker, "Royce knew that . . . Baker was employed by Lear Corporation pursuant to the terms of an employment contract between Lear Corporation and Plaintiff Baker." ECF No. 1, Ex. 1 at ¶ 24. And "[t]he employment contract between Plaintiff Baker and Lear Corporation created a valid business relationship and/or contractual expectancy which benefitted and would have continued to benefit Plaintiff Baker" if Royce did not report on his alleged threat. *Id*. at ¶ 25.

Unlike Baker's first two claims, the analysis of his tortious interference claim falls under the second prong of the Sixth Circuit's preemption test. His claim for tortious interference is preempted, then, if "the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *DeCoe*, 32 F.3d at 216.

Under Michigan law, a plaintiff must prove breach of contract to sustain a claim for tortious interference. *Id*. at 218. Here, the contract at issue that "plaintiff claims was damaged was created entirely by the CBA." *Id*. But even if Baker could show that the CBA did not create his employment contract, which he does not allege, he would not be able to show that the CBA did not at least govern his employment relationship. The latter is sufficient to establish preemption of a tortious interference claim. *Lovely v. Aubrey*, 188 F.3d 508 at *4 (6th Cir. 1999). Under either circumstance, Baker's employment contract "is not outside the ambit of the collective bargaining agreement[.]" *Id*.

But even if Baker could plausibly allege that the CBA did not govern or create his employment relationship, preemption is still warranted. In *Mattis*, 355 F.3d at 907, the Sixth Circuit held that "the question of whether Massman 'interfered' with Mattis's business relationship would require us to delve into the rights and responsibilities of plant supervisors under the CBA." Thus, the tortious interference claim can also be supported by the first prong of the Sixth Circuit's preemption test if the CBA sets out specific duties that govern the behavior of the defendant. In the present case, Royce was subject to duties and responsibilities under the CBA, as has been examined in §§ III.A&B *supra*.

Baker's tortious interference claim is wholly preempted.

## IV.

Accordingly, it is **ORDERED** that Plaintiff Baker's Motion to Remand, ECF No. 3, is **DENIED**.

Dated: January 20, 2015        s/Thomas L. Ludington
                                                                              THOMAS L. LUDINGTON
                                                                              United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 20, 2015.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS